584A 67



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL



May 13, 1939

Hon. Tom C. King
State Auditor
Austin, Texas

Dear Sir:

Opinion No. O-589-A
(Supplemental Opinion)

Re: Proper disposition and ex-
penditure of certain federal
funds under the Texas Centen-
nial celebration statute and
amendment.

On April 14, 1939, this department rendered an opin-
ion, addressed to the Hon. Tom C. King, State Auditor, Aus-
tin, Texas, in which it was ruled that the Board of Control
is not authorized to pay salaries and expenses of its em-
ployees from unexpended federal allocations for specific
projects deposited in the state treasury to be disposed of
by state agencies in completing such projects started by the
United States Greater Texas and Pan-American Exposition Com-
mission, and that the State Comptroller of Public Accounts
is not authorized to issue warrants to be charged against
such funds for general administration purposes.

Other parties interested in the disposition and ex-
penditure of these moneys have requested this department to
reconsider its former opinion to take into consideration cer-
tain facts which had not been presented with the original re-
quest.

The additional evidence presented consists of photo-
static and unsigned typewritten copies of letters and other
documents. Several original instruments have been presented.
A substantial amount of this evidence was not available to
this department when our original opinion was written and we
understand that it was not presented to or available to the
Auditor's office until after our opinion had been released.
Not being in the position of a fact-finding body, we have ac-

cepted all copies of instruments as if they were originals and accept their recitations as correct. We have also accepted verbal explanations bearing upon the operations of both the state and federal commissions and their agents. At the risk of unduly lengthening this opinion we consider it advisable to refer to this additional evidence at some length.

With reference to the photostatic copy of the letter referred to on page 6 of our original opinion, said letter being addressed to the Hon. Walter F. Woodul, Chairman Commission of Control for Centennial celebration, dated January 8, 1937, signed by the members of the United States Texas Centennial Commission, we call attention to the fact that this letter, which makes allocation for various projects, lists each project and gives the specific amount which has been allocated as the amount available in each instance. The letter then states that the work on these projects shall be governed by the following regulations. After setting out various other items, this letter states as follows:

"IV.  ADMINISTRATIVE EXPENSES

"In addition to allotment for construction of projects, there has been set aside by the United States Texas Centennial Commission, the sum of $10,000.00 which is to be disbursed for administrative expenses of the Commission of Control for Centennial celebration, or its agents, in connection with projects undertaken by the Commission of Control for Centennial celebration for the Federal government. Such administrative expenses shall include the payment of salaries or portions of salaries of employees engaged in work on Federal Centennial projects, traveling expenses, advertising for bids, postage and other expenses of a strictly administrative nature."

This letter then provides in greater detail for the expenditure of this administrative account. We look upon this letter as an official order issued by the Federal Commission making allocations.

Another order was made by the United States Centennial Commission May 24, 1937. This order recites that certain moneys had been paid to the Commission of Control, including $8,925.11 for administrative expenses, and in order to facili-

tate the progress of the work the Federal Commission had "decided to transfer by check to the Commission of Control the funds which are necessary to complete the contracts negotiated to date." It was also resolved that the Federal Commission transfer to the Commission of Control an additional $2,500.00 for administrative expenses. The order further states that "the amount required for this purpose totals $508,149.61, including a balance of $1,074.89 remaining of the original allotment of $10,000.00 for administrative expenses, and the additional allotment of $2,500.00, and a check in this amount will be forwarded to the Commission of Control within the next several days." The order then states:

"It is realized that some, if not all, of the contracts negotiated will necessitate the authorization of extras involving additional sums of money. While it is the determined policy of this Commission, and it is felt to be also the policy of your Commission, to effect such economies for the Government as may be possible, the Commission will retain encumbered for the specific purposes for which allocations were originally made, the residue remaining in such allocations after transfers have been made to the Commission of Control to meet the face amount of the contracts. In no case will the total allocations made be exceeded, but the Commission of Control is authorized to proceed with necessary extras up to the total amount of the allocations. Disbursements for extras will be made to the Commission of Control upon the submission to the United States Greater Texas and Pan American Exposition Commission of a resolution properly passed by the Commission of Control, or the Board of Control acting as its agent, authorizing such extra. Upon the completion of each project the Commission of Control shall notify this Commission in order that any residue remaining in the allocation for such project may be released and marked unencumbered.

"Upon the receipt of the check heretofore referred to, the Commission of Control is requested to pass a resolution acknowledging receipt of the check and stating that it will be used exclusively for the purposes for which such funds are allocated."



On November 10, 1937, the State Board of Control forwarded a letter to the Hon. Walter F. Woodul, Chairman of the Texas Commission of Control for Texas Centennial Celebration pointing out that the State Board of Control had made a saving of $5,057.34 out of Federal allocations on jobs which it had completed for the Federal Commission, and in view of the fact that the administrative expense money allowed by the state was greatly depleted and there would be a necessity for further administrative moneys, the chairman of the Texas Commission was requested to file a request with the United States Greater Texas and Pan-American Exposition Commission (the successor of the U. S. Texas Centennial Commission) for an allotment of an additional $5,000.00 out of federal funds for administrative expenses. It is further stated that there would probably be other savings on jobs nearing completion, and these additional savings would be returned to the United States Treasury.

In compliance with this request, on November 10, 1937, the chairman of the Commission of Control for Texas Centennial celebration forwarded a letter to the Budget Officer of the Federal Commission requesting that unexpended balances on certain allocations, made by the Federal Commission to the Commission of Control, be paid into the state treasury of the State of Texas in full for the completion of these projects, any unexpended balances to be returned to the United States Treasury. A copy of the above letter from the State Board of Control was enclosed to Major W. L. Bartley, Budget Officer United States Greater Texas and Pan-American Exposition Commission.

On November 19, 1937, Major Bartley forwarded these letters to the United States Greater Texas and Pan-American Exposition Commission in Washington, D. C., and recommended that they authorize payment of the unexpended balances on allotments, covering various uncompleted projects, into the state treasury for the Commission of Control to complete the various projects, and recommended also that inasmuch as the State Board of Control needed additional administrative funds, had made savings on other projects, and the request was not unreasonable, that $5,000.00 additional money be allocated to them for administrative purposes. There was also enclosed a letter dated September 14, 1937, from the Comptroller of Public Accounts stating that unexpended balances on different projects could properly be returned to the United States Treasury by warrant issued by the Comptroller on properly verified claims.

In response to the above requests the United States Greater Texas and Pan-American Exposition Commission, dated November 28, 1937, forwarded the following letter to Major W. L. Bartley, Budget Officer, U. S. Greater Texas and Pan-American Exposition Commission:

"In order that the affairs of this Commission may be terminated at the earliest practicable date, and since certain projects undertaken by the State of Texas for the Commission will not be completed for approximately one year, it is the opinion of the Commission that funds remaining in allotment account covering these uncompleted projects should be paid to the Commission of Control for Centennial celebrations of the State of Texas for completion of the projects, and you are authorized and directed to make such payment. It is understood and agreed that any balances remaining unexpended after completion of these projects will be returned to the Federal treasury.

"You are further authorized and directed to make payment of an additional $5,000.00 to the Commission of Control for Texas Centennial celebrations to cover administrative expenses incidental to completion of these various projects."

Very truly yours,

The United States Greater Texas and Pan-American Exposition Commission

Jno. N. Garner
   Vice-Pres.-Chairman

Cordell Hull
   Secretary of State

Henry A. Wallace,
   Secretary of Agriculture

Daniel C. Roper
   Secretary of Commerce."

We have a photostatic copy of the following letter, dated December 22. 1937:

"Mr. John V. Singleton,
Chief, Centennial Division
State Board of Control
Austin, Texas

Dear Mr. Singleton:

"Herewith vouchers for Governor Woodul's
signature covering transfers of $210,987.70
representing the balance due on allotments for
incomplete projects plus $5,000.00 additional
allotment for administrative expenses.

"You will note that there is a difference
of $23,750.00 between the amount for completion
of projects as listed in the voucher, and Gover-
nor Woodul's letter requesting the transfer.
This difference is the initial payment of Sculp-
tural contract for the Centaph which was made to
you on November 11, 1937.

Very truly yours

H. R. Lyon
Chief, Division of Accounts."

We have been informed by the office of the Comptroller
of Public Accounts for the State of Texas that this money was
placed in the Texas State Treasury on deposit warrant issued by
that office and the State Treasurer informs us that such money
was so placed on deposit and is subject to be withdrawn from
the state treasury upon warrants issued upon proper authoriza-
tion.

Article 8, Sec. 6 of the Texas Constitution provides
as follows:

"No money shall be drawn from the Treasury
but in pursuance of specific appropriations made
by law; * * *"

Acts 45th Legislature regular session 1937, S. B. No.
138, Ch. 504, p. 1486, being the general appropriation bill, pro-
vides in part as follows:

"United States funds and aid. The proper
officer or officers of any state department,
bureaus or divisions of state agencies are
hereby authorized to make application for and
accept any gift, grants, or allotments of funds

from the United States government to be used
on state cooperative and other Federal pro-
jects and programs in Texas including con-
struction of public buildings, repairs, and
improvements. Any of such Federal funds as
may be deposited in the state treasury are
hereby appropriated to the specific purpose
authorized by the Federal government."

We also call attention to Section 23, Acts of the Texas
Legislature set out in the original opinion, which provides that
Federal allotments shall be expended in accordance with the pro-
visions therein "unless otherwise directed by the Federal Govern-
ment."

We accept the proposition that the Federal Commission
could allocate and spend this money under the Federal Joint Re-
solution setting up the Federal Commission, and that alloca-
tions could be made for administrative expense in carrying out
the purposes of these resolutions. We will also accept the
proposition that the Federal Commission could and did re-allo-
cate unexpended balances on completed projects but we do not
think this is controlling on the question here presented.

The undisputed fact remains that the Federal Commiss-
ion has expired by operation of law by May or June, 1938, but
prior to that time, final allocations of moneys under its con-
trol were made and the money paid to the Texas Commission of
Control and deposited in the State Treasury to be withdrawn for
specific purposes.

The $5000.00 allocated for administrative expense was
handled substantially the same as other Federal allocations
for administration as discussed herein.

It is urged that it was not the intention of the var-
ious commissions that these final allocations and payments were
to become state funds, but were deposited in the state treasury
as federal moneys in trust to complete federal projects; that
the Texas Commission of Control and its agent, the Board of Con-
trol, were merely acting as agents of the Federal Commission,
and not in their official capacities as agents of the State
government, and therefore not limited by enactments of the
State Legislature in handling such money. Under the additional
facts as presented to us, we think this proposition becomes im-
material. It is conceded that if the money is state funds, there
is no additional appropriation for general administrative expense.

Assume that it is federal funds, as suggested. We are
then faced with the fact that the properly authorized federal



Commission, by order, directed that certain moneys be used to complete designated projects, and that unexpended balances be returned to the United States Treasury. At the same time $5,000.00 additional money was allocated "to cover administrative expense incident to the completion of these various projects."

Additional money was allocated for administrative expense, specific maximum amounts were set aside for completion of various projects, the Federal Commission specified and the Commission of Control agreed that unexpended balances on these projects should be returned to the United States Treasury. It must have been contemplated that there would be unexpended balances or "savings" on the projects. This clearly negatives any contention that unexpended balances or "savings" may be used for another purpose, i.e., general administrative expense. What the Federal Commission might have done or had authority to do is beside the point; we must look to what it did. This money is held in the State Treasury subject to these specifications and the Comptroller and Treasurer must be governed thereby.

We recognize that certain hardships may be encountered under the view we have taken, but we feel compelled to the conclusion and so advise, that in our opinion the Board of Control may not pay salaries and expenses of its employees for general administrative expense out of unexpended balances or "savings" from Federal allotments held in the state treasury for completion of these projects.

The second and third questions were as follows:

"(2) Should not the funds for administrative expenses have been placed in the State Treasury and expended in accordance with the provisions of the Act of the Legislature controlling the expenditure of the moneys appropriated for Centennial purposes?

"(3) Has the Board of Control any legal right to pay salaries in excess of the limit of $4,000.00 — as prescribed by House Bill No. 11 — out of the funds furnished by the Federal Government for Centennial purposes?"

In answer to the second question it was ruled that the $10,000.00 allocated for administrative expense in the order of the United States Texas Centennial Commission, dated January 8, 1937, should have been placed in the state treasury and expended

in accordance with the provisions of the Act of the Legislature controlling the expenditure of the moneys appropriated by the state for Centennial purposes.

You were advised in answer to question No. 3 that the funds in question should not be used to pay salaries in excess of the limit of $4,000.00, as prescribed in H. B. No. 11, Acts 44th Legislature p. 427.

From the facts before us at that time it appeared and we understood that the $10,000.00 allocated by the Federal Commission was paid to the Commission of Control without direction as to its expenditure, except as provided in the order of January 8, 1937.

Sec. 23 of H. B. No. 11, Acts 1935, 44th Leg. ch. 174, referring to allocations made to the Commission of Control by the Federal Government provides, in part, as follows:

> "Any funds as received, unless otherwise directed by the Federal Government, shall be under the direction and control of the said Commission of Control to be expended under the provisions of this Act controlling the expenditures of the moneys herein appropriated; . . . "

We shall review the additional facts presented to us to determine whether the Federal Government "otherwise directed" the expenditure of these moneys.

In the order of January 8, 1937, the United States-Texas Centennial Commission promulgated rules for the expenditure of the $10,000.00 allocated for administrative expense. It was provided that payments for salaries were to be made through a federal voucher form and a payroll supported by a designated certification signed by the chairman of the Commission of Control. Provision was made for certification on advertising. Payments for traveling expenses were to be paid on a per diem basis as provided under Federal laws. Other administrative expense was to be submitted on a standard Federal form. All vouchers for expenses were to be finally approved for payment by the Executive Secretary of the Federal Commission. We have been presented with samples of these expense vouchers showing how they were signed and countersigned. Apparently it was intended that this money be used to assist in the administration of joint Federal-State projects.

in accordance with the provisions of the Act of the Legislature controlling the expenditure of the moneys appropriated by the state for Centennial purposes.

You were advised in answer to question No. 3 that the funds in question should not be used to pay salaries in excess of the limit of $4,000.00, as prescribed in H. B. No. 11, Acts 44th Legislature p. 427.

From the facts before us at that time it appeared and we understood that the $10,000.00 allocated by the Federal Commission was paid to the Commission of Control without direction as to its expenditure, except as provided in the order of January 8, 1937.

Sec. 23 of H. B. No. 11, Acts 1935, 44th Leg. ch. 174, referring to allocations made to the Commission of Control by the Federal Government provides, in part, as follows:

"Any funds as received, unless otherwise directed by the Federal Government, shall be under the direction and control of the said Commission of Control to be expended under the provisions of this Act controlling the expenditures of the moneys herein appropriated; . . . "

We shall review the additional facts presented to us to determine whether the Federal Government "otherwise directed" the expenditure of these moneys.

In the order of January 8, 1937, the United States-Texas Centennial Commission promulgated rules for the expenditure of the $10,000.00 allocated for administrative expense. It was provided that payments for salaries were to be made through a federal voucher form and a payroll supported by a designated certification signed by the chairman of the Commission of Control. Provision was made for certification on advertising. Payments for traveling expenses were to be paid on a per diem basis as provided under Federal laws. Other administrative expense was to be submitted on a standard Federal form. All vouchers for expenses were to be finally approved for payment by the Executive Secretary of the Federal Commission. We have been presented with samples of these expense vouchers showing how they were signed and countersigned. Apparently it was intended that this money be used to assist in the administration of joint Federal-State projects.

We understand that in practice this administrative money was not paid in a lump sum direct to the state agencies, but when payrolls or expense vouchers for a given period were sent to Dallas for approval by the Federal agents, a check covering these items was returned with the approved vouchers. The check was then deposited in an Austin bank and checks drawn to the various individuals entitled to the money. This practice continued until about June, 1937, when the balance of the $10,000.00, which amounted to $1,074.89, was forwarded to the Commission of Control, together with an additional administrative allotment of $2,500.00. See order dated May 24, 1937, hereinabove referred to. We understand that this money was placed in the bank and the same practice was followed with respect to presentation of vouchers and approval by Federal authorities before individual checks were drawn.

The Joint Resolution setting up the Federal Commission gave it broad powers in controlling the expenditure of the Federal appropriations, and also gave broad authority to delegate its powers. Many of the records of the Federal Commission and their subordinates have not been available to us since they have been placed in the archives in Washington. No formal order has been presented to us directing that this money be placed in the bank, or that salaries in excess of $4,000.00 be paid therefrom, but undoubtedly the Federal agents did retain a substantial control over the expenditures, consistently approve expense vouchers, and authorize such payments. This continual practice tends to support the proposition that there was verbal agreement between the Texas Commission and Federal Commission that the money should be handled in this way. In a letter dated April 4, 1939, the chairman of the Commission of Control states that "it was further decided that this joint administrative fund would be paid to me as Chairman of the Commission of Control for deposit in a bank, and that I was to issue checks against the account upon vouchers approved as set out above." We should presume that the agents of the Federal Commission authorizing and directing the disposition and use of the Federal allocations for administrative purposes, to whatever extent they may have done so, were acting within the scope of their authority.

In view of the additional facts presented, there may or may not have been verbal direction or authorization by the Federal agents to the State authorities that this money be expended otherwise, so as to remove it from the other provisions of H. B. No. 11 controlling the expenditure of state appropriations, and there may or may not have been Federal ratification and direction after the above mentioned policy was adopted. Not being a fact-finding body, this is a question which cannot properly be passed upon by this department.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Cecil C. Cammack
Assistant

APPROVED
OPINION
COMMITTEE
BY_____
CHAIRMAN

CCC-MR

APPROVED:

ATTORNEY GENERAL OF TEXAS